I understand there was a request to have an exhibit shown that's not in the record and there was an objection, is that correct? That's what we heard from a number of the areas we're talking about today. Why don't we take it up when you make your argument. So this is a, essentially you're asking for judicial notice of a map that's commercially available. It's nothing that specifically marks the. In the arguments that led to the 2000 decision that was issued today. Does the map purport to have lines in there that track what the earlier district court decision said? These are strictly commercial, there's no. In other words, we don't want any lines that would suggest this is what the district court meant or anything like that, right? If it's just a commercial map then you can feel free to refer to it. So long as there are no case specific facts on it then it's fine. You may proceed. Good morning, may it please the court, my name is Lauren Rasmussen for the Port Gamble-S'Klallam and Jamestown-S'Klallam Tribe. We brought an exhibit today and it's from the record ER 135. So as soon as I finish my introduction we're going to go ahead and walk over to it. We're here today because in 1989 we asked the district court to find the western boundary of Lummi's UNA and it did so. And it set the boundary, it said you can't fish in Strait of Juan Fuca, you can't fish in Adamalty Inlet and you can't fish in Hood Canal. And it was affirmed twice by the district court and it was also affirmed by this court in the case of United States v. Lummi in 2000 at 235F3D443 and that court found that the western boundary of Lummi's UNA was at the mouth of Adamalty Inlet and it in fact defined where that inlet was located so that there was no confusion that could be created about what was being reversed and what was not. May I approach ER 135 so I can show that? Before you do that, I'm concerned whether we have jurisdiction over this case. So before we get to the merits let's talk about that. Why is this an appealable order? Because we brought the motion as a motion for contempt for the district court did found that it could not hold the Lummi in contempt because the decision had not been made. How do you hold someone in contempt of something that's ambiguous? Well it's our position that it's not ambiguous, that if the court had looked at the record and looked at what had happened it would have found that there was plenty of evidence that we in fact both knew where the Strait of Juan Fuca was located based on Lummi's own statements that Would you agree, would you agree, if this court finds that the district court's order on this particular matter is ambiguous, do you agree that we don't have jurisdiction? If this court finds that the order is ambiguous, then it goes back to the district court to determine it, but we've Again, that's my question. As you know, under 1291 we're supposed to appealable orders. There are some interlocutory orders that we can hear and I'm just puzzled as to why. Again, I understand it's your position that this is not ambiguous, but I'm just trying to, if it is ambiguous, why is this an appealable order? That's what I want to know. So you're correct that if it is ambiguous then it goes back to the district court to determine, but if it has been determined and it's not ambiguous as we assert that the location is the boundary at Admiralty Inlet, and the court defined that inlet as being between two waters of Hawaii. I don't want to take your time on this, but just to be clear, you agree that if we believe it is ambiguous, then the whole case goes back because we don't have jurisdiction. You concede that? I have to think about that a little more. Well, let me ask you a separate question, but related. The district court denied your motion without prejudice. Well, how is that final? How is that what? How is that final? How is that, sorry? The district court denied your motion without prejudice. Yeah, well, it was a very odd order because the court found it and hadn't determined it. Let me finish, may I finish? We've often held that if the district court, if you have some possibility of seeking a relief on a motion in a district court that's denied without prejudice, we lack appellate jurisdiction over that. But you have appellate jurisdiction because there's remained nothing left for the court to do in that sub-proceeding. We brought it as an enforcement of the... So what do you say? What? Go ahead. I mean, the point is that the district court wanted us to go ahead and have a whole sub-proceeding to determine whether a sub-proceeding was indeed required, and that would leave us with no ability to seek redress for our issue, which is we believe that the Ninth Circuit determined this issue that you cannot transfer, you cannot draw a line from admiralty to harrow in an interpretation or self-interpretation of the decision. Let me stop you there. Let's say you go through that exercise, all right? And then you take an appeal. I assume that you haven't waived your right to raise this issue in that appeal, correct? Well, yeah, after we re-litigate the whole entire issue. Because you get a final, right, because you get a final order. But we have a final order No, no, I mean, this happens often in litigation. This happens often in litigation where parties say, look, if you would just resolve the issue this way, then the case would be over and you're making us go to trial or whatever it is. And we say, well, yeah, but you have to do that to get a final order and we have a record. What makes this different? Post-judgment denials of relief are routinely appealable. It's an order saying there's nothing left for me to do in this sub-proceeding. It would if it's denied with prejudice. But without prejudice doesn't mean anything because he's already decided the issue. He said without prejudice, but it was sort of, in a way, a little bit off the cuff because he already said the western boundary had not been determined, that there's no evidence that this is the eastern strait of Juan de Fuca, when in fact Lummi's own statements defined the eastern strait of Juan de Fuca as the body of water partially enclosed by the San Juan Islands, southeastern Vancouver Island, northeastern Olympic Peninsula. I mean, that's this area. They defined that as the eastern strait of Juan de Fuca. But following up on Judge Thomas's question, at least as I read the district court transcript, it appeared the district court was saying, hey, look, this was established long ago. There's this ability to resolve questions regarding specifics of these boundaries and so you've got this sub-proceeding that's available and apparently has been used before. And he did it without prejudice because he thought that was the appropriate thing to do here. Do you disagree with that? Well, I disagree in that, first of all, I mean, when does it end? Are you going to have a sub-proceeding? Oh, that's a separate issue. And a sub-proceeding, then a sub-proceeding. What I'm talking about is... In paragraph 25 at ER-126... It ends when the district court says it's over. Well, paragraph 25 reminds folks that we still have all the available remedies under the federal rules of civil procedure, that paragraph 25 didn't take away our rights to ask for remedies. And after 21 years of litigation on the very issue of where the western boundary of Lummi's UNA is to tell us that it has yet to be decided and give us a redo is not an appropriate response, given the resolution. Ms. Rasmussen, with respect, I would really like to get an answer to my question, which is, when you look at the district court, what district court said in resolving this issue, isn't it true that he left this without prejudice because it was his preference, his thought, that this needed to go through one of these separate proceedings where you would have all the parties brought in who had a stake in this? And there are some, besides the two that are here, who have a stake and a position, so that the whole thing could be resolved there and then come to the Ninth Circuit, because we're not a fact-finding body. We review the record. So again, my question is, didn't he state that it was without prejudice because it was his preference, his stated preference, that you go through this sub-proceeding first? I never understood why he said that, given that he had already decided the issue. Is there any other construction of it that you can give me, other than the one I just indicated? But what would we do in that new sub-proceeding? Then you go back to the sub-proceeding. You file an action before the district court as provided in the earlier district court format. You get the parties involved who need to be resolved. You present your evidence. They present their evidence. The district court makes a decision and makes a final determination on this issue, which can then be appealed to our court. But we did that already. My concern here is that we've got a half-cooked stew, a bouillabaisse, if you will, and we have no jurisdiction over bouillabaisse. We need to have something on the table ready to eat before we can decide. Well, I guess our position would be that it is already ready to eat and the line was drawn. But let me give my colleague a chance to say a few words, and maybe he'll do a better job at getting to what you're looking for. Thank you. Thank you. Thank you. May it please the court, I'm Steve Swagey, attorney for Appellant Lower Elwha-Klallam Tribe. I think we, just to address this question, which is, I guess, a tough one, I think we have a chicken-egg problem here. If the prior decisions did not determine the issue as we say it did, then we have to have more proceedings in the district court. But if they did determine the issue as we say it did, then it seems that we can get a ruling to that effect from this court. Whose burden is it to show that this is a final judgment of the district court on this matter? I'd say it's probably the appellant's, yes. You have to show the jurisdiction. What evidence that you've put on, what evidence can you give us that shows that the specific issue that you're appealing here has been finally determined by the district court? Well, I don't know if it's evidence so much as there were interpretations, legal interpretations, that the district court made in 2009 regarding what this court decided in 2000 and regarding what the district court decided in 1998. And we say several of those are incorrect. Well, I appreciate that. But, for example, there are all kinds of evidentiary issues that people have, attorney-client privilege, work product, whatever. And they say, oh, the district court got this wrong and they want to appeal. And we have no jurisdiction of those. Those are interlocutory appeals. We have to send them back. We get them all the time. And my concern here is why is this different? What, as the appellant, with the burden to show that this is a final appealable order or that fits in some statutory exception, why is this, why does this fit? Well, I think functionally the motion that the Clallams brought in 2009 was a post-judgment order seeking to enforce the outcome of the sub-proceeding from the year 2000. What do you say to Judge Thomas' point about the fact that this decision was made without prejudice? Isn't that a clear statement? Like, you know, go back, try it again, let's work on this, but it's not final. We do have some discussion of that in our brief and in our opposition to the initial motion to dismiss. I think part of the answer lies in the fact that in this large case of U.S. v. Washington, we have had a practice for a long time of having these sub-proceedings pursuant to this paragraph 25 that's been amended. But here's my question. I mean, in the ordinary civil case, and I realize this is post-judgment, special proceeding, but in the ordinary civil case, people raise issues just as you said. We're entitled as a matter of law to this resolution. District Court denies it, goes through the evidentiary hearing, goes through trial, and the party hasn't lost its right to appeal the issue. So the party appeals and we say, yeah, you know, they're right otherwise, but that's the way our appellate rules work. Now, if the District Court in this case said, I'm denying it with prejudice, it's over for you, yeah, I think it's different. But it seems to me the District Court anticipated going through a proceeding and then having you renew a motion. And in that event, I question why it's final for our review. That's my issue. Well, what the District Court wants us to do is to file the functional equivalent, the legal equivalent of a new action. Yes, exactly. I understand that. And I think there are cases, and we've cited them in our response to the original motion to dismiss, where, you know, once the District Court is done with an action, even when it's without prejudice to the filing of a new action, the outcome of the first action is a final appealable order. Yeah, we went on BOC on one of those cases and it was without prejudice and decided that you had to have a final order, even though everybody, all the parties said it's futile, it's decided, it's all over. And this went back, the District Court entered a final order and we took it up again. But that went from panel to on BOC to back down to the District Court. So this isn't an unusual question. And the reality is, I mean, I'm just looking at a couple of them here, there's a sub-proceeding number 89-2 signed by Judge Martinez. There's various orders on that. There's an earlier one, sub-1, that I think Judge Rothstein was involved. The reality is, there have been a number of these. The district judge that established this order in the first place, I think, was very wise because it's very complex. I mean, you're dealing with patterns of conduct by the tribes that have been there for centuries. And, you know, a lot of the people who were involved initially have long since passed on. And some of it's a little ambiguous. And under the circumstances, there was an arrangement set up. Let's create a tribunal that will take care of these issues. And your district judge in this case, it seems to me, said the same thing. You know, look, you've both got some interesting arguments here, but there are other parties who need to get involved in this. Let's do one of these sub-proceedings and then you can go from there. And that's my problem. You're here before that took place. Well in one sense, yes. But our position is the one that hasn't taken place yet is unnecessary if we're correct that the one that's already taken place answered the question. And we say emphatically that it did. Unfortunately, we haven't had much opportunity and we've got less than a minute yet to sort of make our cases to that. Your case is in your briefs and we've read the briefs and we appreciate that. But unlike a state court, if we don't have jurisdiction, we're out of luck or you're out of luck. Understood. So that's what we're struggling with here. That's understood and we certainly don't mean to be cavalier offhand about that. We understand that that's a... Because it wasn't discussed much in the briefs, that's why I wanted to explore it with you. So in the time remaining, let's get to it. Can you stress the things that you haven't raised in your briefs that you'd like to talk to us about? Well, I think the one thing to stress that was actually my task for today is that Judge Lummey had the notion that somehow the eastern boundary of the Strait of Juan de Fuca had not been defined in the prior orders. And he felt he needed to know that in order to know where the line of demarcation is between Lummey's fishing area and the areas that are outside of Lummey. And what he didn't pay any attention to really was the fact that in this sub-proceeding, where it expressly claimed something called the waters west of Whidbey Island in addition to the Strait of Juan de Fuca and Admiralty Inlet, that cross claim was denied in its entirety. This court on appeal reversed only as to Admiralty Inlet. And we think it's very clear that we know where Admiralty Inlet is. I could approach the map at some point and show you the line of demarcation between Admiralty Inlet and the waters west of Whidbey Island or the Strait of Juan de Fuca, whichever you prefer to call it. And I think that's really part of where Judge Martinez missed. He focused so much on what he thought was a lack of clarity between the eastern portion of the Strait of Juan de Fuca and the waters west of Whidbey Island that he failed to accord proper significance to the fact that Lummey had claimed them both. The Judge Rothstein in the district court in 1998 was very aware of that, made reference to those specific geographic terms, and then proceeded to deny those claims in their entirety. On that earlier cross complaint, was there a judgment entered that contained a claim either a meets and bounds or some other form of description that gave an express line of demarcation between the areas about which you refer? No, the judgment is very brief. You have to look to the language of this court's opinion. And therefore potentially ambiguous, certainly in the mind of Judge Martinez. There are two paragraphs in this court's opinion from 2000 that address Admiralty Inlet specifically. One of the things that it notes is that it functions as a passageway between two landforms, Whidbey Island and the Olympic Peninsula. There is an abundance of material in the record, including statements from Judge Martinez that acknowledge that there is a specific boundary to Admiralty Inlet. Point Wilson to Partridge Point on those two landforms. Past which, Admiralty Inlet no longer serves as a passageway between landforms. You're out into this open marine water that must either be the waters west of Whidbey Island or the eastern portion of the Strait of Juan de Fuca. When you get into those waters, you're outside of Lummi's UNA. It involves recognizing that there are some things that were decided by necessary implication in Judge Rothstein's decision. But it's not like we're asking for a huge loop of logic when she says waters west of Whidbey Island and the Strait of Juan de Fuca are specific elements. That's right about all that. Why couldn't the district court simply exercise equitable jurisdiction or equitable discretion in not holding someone in contempt? And to some extent, I mean, there are factual issues underlying a decision to hold contempt or not, but there's also some degree of judicial discretion. And why couldn't the district judge have said, well, maybe if you sort of follow all these things along, you follow the argument, you come up with an answer, but that's not clear cut enough for contempt. You know, contempt, you really need to have something that's very clear that somebody can point and say, look, you define the court order. And the complicated way in which you've explained the contempt, which is what was in the briefs, and I do follow it, it's just simply too complicated, too complex, too difficult to come up with a clear cut answer in order to invoke the heavy handed remedy of judicial contempt. I don't know if you followed all that. No, I follow that. And I guess I would say we're certainly not here asking that this court direct the district court to find Lumme in contempt. What we're here saying is that there are errors that Judge Martinez made when he interpreted the prior decisions in this matter, and we would like those corrected. Assuming we have jurisdiction at all, and I mean, we're past that point of the argument because we're not discussing the merits. What we are reviewing is, if we have jurisdiction to review anything, is a decision of a United States district judge not to hold somebody in contempt. And that's a factual, that has a factual component, you know, but it also has a heavy dollop of discretion. And can we say anything other than, yes, the district judge erred or abuses discretion in favor of the district judge? Well, I think if the issue for this appeal were framed purely as one where we're trying to determine whether Judge Martinez should have held a party in contempt, we would recognize that there's some deference owed by this court to the judge. Isn't that the only way you get here? I thought that was your very argument, that contempt is a final judgment, and that's why you're here. If you're saying, as I got from you a minute ago, that if you were here to get somebody in contempt, one, you're just trying to clarify these boundary issues. That gets back to the very point we talked about before. It really isn't contempt you're concerned about. You just want to get these boundaries clarified, and you think that by using the contempt proceeding, you can sandwich your way into an interlocutory appeal, or we'll decide the issue finally. Are you confirming that you're really not here to try to get somebody held in contempt? We are not here to ask this panel to direct the district court to find someone in contempt. We're here to ask... Isn't that the end of the story then? No, I don't think so. I think you've just fallen off the edge. I don't... See, I can sort of buy your argument. I think I'm disagreeing with what Smith said, but I can sort of buy the argument as, look, this is a contempt proceeding. We think these people are in contempt. This is a separate issue. You are to reverse, assume jurisdiction, and tell the district court you hold them in contempt. I can sort of see that. I'd have to think about where I come out on that, but I can sort of see that. If you are not doing that, if you're just saying we want to sort of get clarification of the legal issue, we're not really arguing the district court abuses discretion. Assuming the facts are in our favor, we are not arguing that the district court abuses discretion. Then you're in a different land altogether. Well, I think some of the errors that the district court made do rise to the level of an abuse of discretion. For instance, I think it's in ER 3. I didn't bring it up with me because we were talking about the jurisdictional issue. But ER 3, for instance, he points to evidence that wasn't before Judge Bolt as a reason for casting doubt on the decisions of Judge Rothstein, even though this court had already ruled that you can't look at this latter-day evidence. So there's just some fundamental errors that the district court made when it looked at what happened before that will be there to haunt us if we ever do have to go back into this new sub-proceeding. But you can always appeal those. If you go back into the sub-proceeding and you believe that Judge Martinez got or gets it wrong in the new sub-proceeding, you can appeal that to the Ninth Circuit. And if we agree with you, then we can reverse it. The problem here is you're trying to get an interlocutory appeal about these substantive issues which are clearly not finally decided by the district court. The district court is saying, we need a sub-proceeding. And you're saying, we're not really trying to get anybody in contempt. We want to get those other issues resolved. Well, but these, our point is these are not new issues. Our point is these are issues that were already decided. Not new in this case. It's just a different spin on the same issues. But the reality is this is like a land use issue. Somebody says, you know, you can use the back 40. Well, what back 40? Where? Where is the fence line drawn? Can you use it all day long? Part of the day? These things go on, you know, for a long, long time. And that's why there was wisdom in the district judge to set up these sub-proceedings as a way to resolve these issues. We understand that. And I guess we would continue to emphasize that we've done one of those and we had an outcome. You may have an opportunity to do it again. I understand. Thank you. We'll hear from the Lummi. Good morning. My name is Mary Neal for the Lummi and I represent the Lummi Nation. I'd like to point out to the court that there's a number of representatives from the Lummi Nation present today. There are three points that I'd like to discuss. The first of which we've spent a lot of time on this morning already, which is that the court should dismiss this appeal because the appeal is from a denial of a motion for an order to show cause with leave to renew. That doesn't constitute a final appealable order. So I assume though, if we adopted your suggestion, you would not come at the end of these proceedings and say, look, Judge Martinez issued a final order that was binding and therefore they can't raise that on appeal, right? I don't believe so. He said it's dismissed without prejudice to renew. Right. So I mean you would concede that if there's a final, there's an appeal after the sub-proceeding that all of these issues are preserved for later consideration on the merits on appeal, right? Yes. And that Judge Martinez would have the right to change his mind. That's correct. He did not make up his mind. He said, it's not clear enough for me to use the heavy-handed remedy of a contempt, which leads me to my second point, my roadmap that I haven't finished yet, which is that the district court did not abuse his discretion in concluding, in declining to issue an order to show cause. Let me ask you one other follow-up question. I mean, it seems to me though, in fairness, that these contempt proceedings in this peculiar case that's lasted a long time have become a proxy for a declaratory judgment. Is that your understanding as well? The use of contempt as a proxy for a declaratory judgment? Yes. It would be, I mean... I mean, I gather that's what your opponents are arguing this morning is that, look, we aren't necessarily asking for contempt in the traditional sense. We're just asking for a determination that we're right on the law. Now, whether or not we think that's a, you can pound that square peg into round holes is a different matter. But, I mean, is it true that they've got a point that contempt proceedings in this peculiar suit have been used as a proxy for declaring rights? In this case? No, over the history. Okay. I think contempt is not appropriate for a declaratory judgment. It's appropriate when someone's been told, don't do this, and this is specific and definite. Well, I know, I guess I'm asking a slightly different question. I'm just saying, have contempt proceedings been used in the past in determining the rights, the fishing rights in this area? I'm not aware of it being used as contempt that way, to declare rights. I think the rights were already declared in Final Decision 1, and then if somebody's in violation of that... But motions for contempt have been filed before, correct? There have been some. I'm not as familiar with those. Okay. All right. Okay. So, I will just skip into my argument on the lack of jurisdiction, and that this Court lacks jurisdiction under 28 U.S.C. 1291. It's not a final order. There are two prerequisites to this Court's jurisdiction, full adjudication of the issues at bar, and order B, the final act in the matter. Neither of those are present here. It is clear that the District Court did not fully adjudicate the issues raised by the Kalama's motion, and that issue was essentially whether these waters here were intended to be included in the Strait of Juan de Fuca for purposes of exclusion from Lummi's UNA. It did not decide the issues. It said, in a quote from the District Court, it cannot be said that the exclusion of the Strait of Juan de Fuca from the Lummi's UNA determination determined that the western boundary of that UNA when the eastern limits of the Strait itself was not described. The District Court did not abuse its discretion in refusing to substitute the actual language of this Court's 2000 decision for the Kalama's belief on the location of the Strait of Juan de Fuca. Why is that? It was not an abuse of discretion. Why is it an abuse of discretion? Why isn't that aspect of the District Court's ruling just a question of law? It's a question of what is it that the earlier judgments really meant? And if you have to look at the appellate opinion to explicate it, maybe you have to, but it's not hard to do. Why isn't it appropriate? I mean, we can talk about the exercise of discretion in holding contempt or not. It's a separate issue. But why isn't the interpretation of what the earlier ruling was a question of law? And if it is, why is it not properly determined by looking at both the District Court opinion and the appellate opinion? And if you do that, why aren't they clearly right? Okay. Let me make sure I understand. First, why isn't Judge Martinez saying... Yes, we all remember Judge Bolt. Sorry. Judge Martinez saying... He saloons over all of us. Let me make sure I understand. Why... Wasn't he in this courtroom maybe? It may very well be. I believe his ghost is still with us. Anyway, I'm sorry. It's okay. Let me make sure I understand the question though. What Judge Martinez said, looking at this Court's decision in 2000, I'm not sure what it means. I certainly wouldn't hold somebody in contempt for it. Is that wrong? Okay. There are two parts to that. There was the I don't know what it means part, and I certainly wouldn't hold somebody in contempt. Okay. And let's say, which is not a fact of this case, but let's say there was a footnote in the judgment of the District Court itself that explained exactly what it meant. And the District Court had simply overlooked the footnote. We could say the part where you say you don't know what it means, Judge Martinez, you're just wrong. You forgot to look at the footnote. If you look at the footnote, it's very clear. Right? That's a question of law. This would not be a question of discretion. The District Judge couldn't say, I will only look at text. I'm not going to look at footnotes. Right? That's the move. We're together on that. I think if that footnote was very specific and definite. Let's say it was tiny print. It could be as small as you want. If it doesn't tell something. Let's say it's quite specific and definite. And the District Court simply overlooked it. Then that would have been an error on the District Court's part. That would have been an error of law. It's not a question of discretion. The District Judge can't say, I'm not going to look at the footnote. Okay. So now we have something slightly different, which is not quite a footnote. I mean, it is a different case. In the same look, you look at the District Court's order, and in understanding what the District Court's order does, you don't look at a footnote, but you look at the explication of the District Court's order on appeal to the Ninth Circuit. So in understanding what the District Court meant, you look at the Ninth Circuit opinion. And once you do that, once you take into account what the Ninth Circuit said, it becomes very clear, just as if you had a footnote, it becomes very clear what the District Court meant in the early proceeding. I'm not asking you to test it, whether it's clear. I'm just asking you the decision not to consider the explanation in the Ninth Circuit. Isn't that a question of law, not a question of discretion? The District Judge can't say, I just have no discretion not to look at what the Ninth Circuit said. If he didn't look at it, that would be a different story. But here he did look at it. He looked at the language of the 2000 decision and said, let me turn to that page so I can quote it to you accurately. And I quote, geographically, however, Admiralty Inlet was intended to be included within the marine areas of northern Puget Sound from the Fraser River south to the present environment of Seattle. End quote. The Court reached that conclusion based on the geography and by this further reasoning. And I'll quote again. If one starts at the mouth of the Fraser River and travels past Orcas and San Juan Islands, it is natural to proceed through Admiralty Inlet to reach the environs of Seattle. The waters that we're talking about here are between San Juan Islands and Admiralty Inlet. You know, I think you've jumped ahead one step to the merits. I'm asking simply a generic question. We can go to that next step, and I don't have any trouble with it. The question I was asking is, if the District Judge says, look, I'm not going to take into account in deciding whether the earlier order was clear what the Ninth Circuit said. I'm just not saying, let's say, or we could sue what he said as saying, look, I'm only going to look at the four corners of the District Court, or I'm not going to look at the Ninth Circuit. The question whether he needs to look at the Ninth Circuit decision or not is not an abuse of discretion question. That's a de novo question. We could look at it and say, yes, Judge, you are right. You only look at the District Court order. You don't need to consider the Ninth Circuit. Or we could say, as a matter of law, you really do have to consider what the Ninth Circuit has done in ruling on that order. And that's a question of law, not a question of discretion. Okay. And I guess I'm struggling with understanding, because here the District Court made a decision, and it came to this Court in 2000, or about 2000, and the decision reversed in part and affirmed in part. So how can he, how can we get to that hypothetical without, I mean, because then you're just looking at this original order that was appealed and reversed and remanded. Are you saying that if he only looked at that order, that that would be wrong as a matter of law, without looking at the appeal decision? That's right. Yes, I think that would be correct, that that would be an error of law to only look at the reversed and affirmed in part. And I think that's what your opposing counsel is arguing. And this is now where we get to the next of the merits. And they're saying, look, we believe that if you take the District Court's order, you put it together, I forget what year the District Court's order, this is the order that was reviewed in 2000 by the 9th Circuit, and if you put it together, the District Court's order of the 9th Circuit, the ruling, it becomes very clear that the Loomis U.N.A. is not, in this area, it's not disputed. It doesn't extend that far west. I think that's what they're saying. If you look at, I guess I struggle with that argument, trying to understand, but the District Court order read in conjunction with this Court's opinion in 2000, reversed in part and affirmed in part. It said Strait of Juan de Fuca is gone. It said Mouth of Hood Canal is gone. And it said, but it said Admiralty Inlet is included. But it didn't say Strait of Juan de Fuca is here, and Admiralty Inlet is here. I guess from the opinion, it's not even entirely clear to me that these waters are part of Strait of Juan de Fuca. And it's fair to say that the parties themselves have strong disagreement about whatever the 9th Circuit said as applied to the earlier District Court order. Is that correct? We disagree on what it says. And the District Judge took that perhaps into account when he concluded that this needed to be further litigated. There had to be further fact-finding to clarify items that he didn't think had been resolved by what the 9th Circuit had previously clarified. That's correct. And he said, not only, and that can't be resolved in this contempt proceeding. There's a lot of other people who have an interest here, and the proper mechanism to the permanent injunction. We've used it often, used it frequently. It's been, often resolves disputes without even going to court. And it provides a full and fair opportunity for everybody. And the parties in this case have tried to mediate this and it didn't work, right? For, there were some... On this particular issue. On this particular issue. There has been some meetings, but they were outside of that paragraph 25 structure. Right, but it wasn't successful. We met together, not with a mediator. There was no other external... Okay, but the parties met and conferred and it wasn't, they weren't able to resolve the issue. Well, it wasn't, I caution, because a meet and confer is a term... I don't mean it in a technical sense. Yeah, okay. Then, yeah, we did step down and talked about the issue. We were not able to come to a resolution. Are these mutually exclusive? I just want to understand, are the usual and custom grounds mutually exclusive? Could something, a body of water, be deemed to be usually a custom grounds for both the Clalams and the Lume? There are often over... Are they... There are a lot of UNAs and there are some that are overlapping in areas. I have a blue book, but I don't know if you want me to go grab it and start reading some of the UNAs. No, I just meant as a concept. Yeah. As a concept, saying that something is a UNA for one tribe does not necessarily mean it could not also be a UNA for another tribe. That's correct. So having a determination that it is UNA for one tribe does not preclude the possibility that... does not adjudicate the question of whether it might also be a UNA for another tribe. I think that's correct. Okay. There's UNAs and then there's primary right areas and we're not even... We're not in a primary right area. We're just talking about broad generally. Lume's UNA includes the marine waters of northern Puget Sound from the Fraser River. I can point to my map over here. Fraser River up there, south to the present environs of Seattle. In the dispute, I mean what lies in the heart of the dispute is that if both tribes fish there, it depletes the... they compete with each other and it depletes the amount of fish. Is that what it is? For this particular area or any of the overlapping UNAs. Even tribes that don't have UNA that overlap with Lume are concerned about where Lume fish for example. I think part of why Tulalip filed a brief in this matter. Because you intercept the fish that are going somewhere else as well. I see. I see the fish travel. It's sort of like water rights, right? It's very much like water rights. Or dolling. So I guess I have about a little... no, I'm over my time. Do you have anything else to say? I would say... I could say a lot more if you'd like me to. I think the most important skill a lawyer can have is to know when to stop talking. Then I will take that reminder and sit down now. Thank you. You're over your time but we'll give one or the other counsel another minute to pick up any rebuttal. Well, I have to say for this case for us it's been like the vampire that never dies. We sue them for fishing in this exact fishing spot, we win and then we get to come back again over and over and over again. But this comes down to this. There was a period of time of lawlessness when a bunch of these decisions came out. And Lummi was cut back from going south of the environs of Seattle. And Lummi was cut back from Hood Canal. And Lummi was cut back from the Strait of Juan de Fuca. And every time we get a new judge there's this resurgence of let's see what we can do.  Or Rothstein has gotten herself out of doing it somehow. And so we get this new judge. She's educating the judges. Well, that's good. I'm not saying it's not a great choice. But the problem is that there's always worth another shot, right? And it's a little bit like the situation when you talk about McComb versus Vertex. And the situation of whether the order has to be so specific or can it be general enough that says, look, you can't fish in this area. Don't do this. Stop it. Or does it have to have a meets and bounds description? And none of the UNAs have a meets and bounds description. So, you know, absent that, we basically, you know, if you follow that logic, we don't have a single enforceable UNA except for the Sklallams who filed a map. And that's why we've never had any problems with our UNA. But, you know, so you have to at some point say, look, this is just a resurgence. That's that game where you bang down on the heads and they keep on popping up. I have a suggestion for you as a former real estate lawyer. Well, we'd like to draw a line. We'd like to put up a boundary, but the Coast Guard won't let us. When you go back, if you do, do prepare a map. Yes. Meets and bounds. Make it final. Don't leave any more ambiguity. If you do that, you'll avoid the same problem that you've got right now. As long as you leave it in just words, general words and UNAs, it will never stop. Well, you know, that's interesting because in front of COIL we tried to use the catch area descriptions. Can I show you? Judge COIL and Judge Rothstein. Judge Rothstein, they told us not to because those catch area descriptions can change. Let me ask you this question. Is this capable of mediation to resolve these issues? No, this is not capable of mediation. I mean, the problem is that when it comes to tribal fishers, a loophole becomes like this. It's an art. I mean, anything that someone can interpret as a loophole. But in terms of, if you look at Vertex where the court had a specific exemption in Section 4B that took away from the whole, we don't have a specific exemption from the Strait of Juan de Fuca here. We have a description of Admiralty Inlet and why Admiralty Inlet was granted. This order is specific and definite enough. And the district court erred when he said this wasn't determined. I can't figure it out. He didn't give us an oral argument or an opportunity to, you know, explain to him some of the issues that were obviously long and complex. He said, well, why don't you just have another sub-proceeding, you know? And it's like the vampire again. At what point, you know, are we going to be barred by res judicata for suing somebody for doing the same thing? Is Lummi going to say when we file that new sub-proceeding, no, you can't do that because you already sued us for this and lost. Well, we told you to file it, so it's hard for him to do in contempt. Yeah, but if you look at the district court's decision, I mean, he's really finally decided this issue. He said this has not been determined. And so what do you do with that? I mean, if you look at VMX versus Miller, you talk about, you know, the court did not grant us leave to amend to dismiss the action. The court, VMX, did not have a final order of dismissal. Our order is order on motion to dismiss. Order to dismiss. We have a final order of dismissal in this action. He is not going to let us argue that the western boundary was decided. He's going to look at, can I show you my map because I really, really brought it here all the way. It's a trouble getting tied to exhibits on appeal. Yeah, well, it's 135. It's ER 135. And this is one of their lines. They had several. But, you know, this is the line. This is what the court said. This is the line. That's the western boundary of their UNA. When they go like this 25 miles away from that line, as the court said in McComb, they did it at their peril. They crossed the line at their peril. And if the district court's not willing to stand up and say, enough, you know, enough is enough. Don't make the Clallams go through this again. Don't make them constantly relitigate the same action. There was many parties that had their day in court. And if you look at the history of this case, how many times Lummi has managed to resuscitate it? 1990, dismissed, you know, they lost all counts. Then they were able to argue it wasn't a final appealable order. Well, now they're arguing again that we don't have a final appealable order. Have you ever followed the Colorado River litigation and how many decades that took? You know what finally resolved it? A special master that's put specifics. Consider that. But the thing is that at 452 of the decision, the Ninth Circuit said Admiralty Inlet is this body of water between two inlets. And that's where we're reversing. And I don't understand why we have to get more specific than that. I mean, I think people have to have a good faith interpretation of the decision. And when they sit down and say... It's a whole other matter. And that's the issue you brought. Well, the order on contempt, the order was a dismissal of our action finding that he couldn't first hold them in contempt without deciding the issue. So it's kind of a duplicate order in that it's an order of dismissal and an order on contempt. And so just because the court chooses to, you know, do something that...  He left us with kind of a strange order to interpret. Okay. Thank you. Thank you. Cases, I will stand submitted.
judges: Kozinski, Thomas, Smith M.